UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                             Civil No.

vs.

$42,020.00 U.S. CURRENCY,

    Defendant.
_____/

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW COMES Plaintiff, United States of America, by and through its attorneys, Andrew Byerly Birge, United States Attorney for the Western District of Michigan, and Daniel T. McGraw, Assistant United States Attorney, and states upon information and belief that:

**NATURE OF THE ACTION**

1. This is a civil forfeiture action filed pursuant to 21 U.S.C. § 881(a)(6) and Supplemental Rule G(2) of the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America $42,020.00 U.S. Currency that has been converted into Cashier's Check #26323, West Michigan Community Bank (the "Defendant Property").

**THE DEFENDANT IN REM**

2. The Defendant Property consists of $42,020.00 in United States currency that was seized on or about March 31, 2021 by the Department of Homeland Security, Homeland Security Investigations (HSI), in Van Buren County, Michigan,

1

that was subsequently converted into Cashier's Check #26323, West Michigan Community Bank. The Defendant Property is currently in the custody of HSI.

## JURISDICITON AND VENUE

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A), because this action is being commenced by the United States of America as Plaintiff, and the acts giving rise to the basis for forfeiture occurred in this judicial district.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to forfeiture occurred in this judicial district, and/or pursuant to 28 U.S.C. § 1395(b), because the Defendant Property was found within this judicial district.

## BASIS FOR FORFEITURE

5. As set forth below, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance; and/or (2) proceeds traceable to such an exchange; and/or (3) money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 841, 846.

## FACTS SUPPORTING FORFEITURE

6. On March 31, 2021, a trooper with the Michigan State Police (MSP) observed a 2020 silver Nissan Altima with a Texas license plate ("the Subject

Vehicle") following a vehicle too closely as it traveled down eastbound Interstate-94 near Lawrence, Michigan in Van Buren County.

7.      After the MSP trooper started following the Subject Vehicle, it abruptly changed lanes, slowed down, and crossed over the right fog line, failing to maintain its lane.  The MSP trooper also observed what appeared to be the driver manipulating a handheld device as he drove the Subject Vehicle.

8.      The MSP trooper initiated the marked vehicle's emergency lights, signaling the Subject Vehicle to pull over.  The Subject Vehicle did not pull over right away and instead took an unusually long time to stop.

9.      The MSP trooper identified the driver and sole occupant of the Subject Vehicle as Anthony Smiley, a resident of South Bend, Indiana.  During this initial contact, the MSP trooper observed a cell phone in Smiley's lap.

10.     Smiley did not have a valid driver's license and advised that the Subject Vehicle was a rental car that he rented that morning in South Bend.

11.     Smiley provided a rental agreement for the Subject Vehicle under the name of Dante Franklin.  When confronted about why the Subject Vehicle was rented in someone else's name, Smiley changed his original statement and stated that his friend "Dante" actually rented the Subject Vehicle for him.

12.     During this initial contact, the MSP trooper concluded that Smiley was abnormally nervous, as the trooper observed his voice and hands shaking, and observed Smiley avoiding eye contact.

13.     At the trooper's direction, Smiley exited the Subject Vehicle.  While

walking back to the front of the patrol car, the trooper observed a "Cookies smell-proof" backpack with a marijuana leaf keychain on the rear seat of the Subject Vehicle. Upon information and belief, such a backpack is used to hold contraband, and the brand of the backpack affiliates itself with marijuana storage.

14. In response to routine questioning by the MSP trooper, Smiley stated that he was traveling from South Bend to Detroit to somewhere near 8 Mile Road to visit family. When asked who he was visiting, Smiley stated "just cousins," but did not provide any names. Smiley stated he would likely be in Detroit for one night.

15. When asked if he had any firearms, narcotics, or large amounts of cash in the Subject Vehicle, Smiley stated "no" to firearms and narcotics, but paused when asked about large amounts of cash, and subsequently stated, "yeah." When asked how much money he had with him, Smiley stated, "about $15,000."

16. During routine database checks, the MSP trooper learned that Smiley did not have a driver's license issued by the state of Indiana, only an identification card. The MSP trooper also learned that Smiley had previously been arrested and charged with marijuana-related offenses in Indiana.

17. The Subject Vehicle was rented through Enterprise in South Bend that same morning around 11:27 a.m. by Dante Franklin and due back the following morning, April 1, by 11:00 a.m. The MSP trooper learned that Franklin had prior drug-related charges in multiple states.

18. When asked again about how much money he had in the Subject Vehicle, Smiley stated between $15,000 and $20,000. When asked why he had so much

money, Smiley stated, "I just like money," and that he wanted it with him while visiting family in Detroit.

19. When asked whether he intended to use the money to buy marijuana, since it was legal under Michigan state law but not under Indiana law, Smiley denied that he was intending to purchase marijuana with the money, but instead stated that he was going to Hutch's Jewelry Store in Detroit to buy a chain necklace. When asked why he initially lied about the purpose of the money when it is not illegal to buy jewelry, Smiley stated, "I know, it's just a lot of money." When asked if he withdrew the money from a bank, Smiley stated, "yes," but noted not all at once because he knew "that's a red flag."

20. Smiley verbally consented to a search of the Subject Vehicle by MSP.

21. The "Cookies smell-proof" backpack on the rear seat contained numerous stacks of rubber-banded U.S. currency, mostly in $20 denominations. Upon information and belief, the rubber bands and hair ties used to bundle the currency was consistent with drug proceeds packaging and inconsistent with how banks distribute money. Similarly, most of the money in $20 denominations was also consistent with drug proceeds, as it is a commonly used denomination to purchase drugs.

22. Using a money counter, officers determined the backpack contained $42,020.00 of U.S. currency, more than double the amount Smiley stated.

23. When asked again how much money was in the backpack, Smiley stated between $30,000 and $40,000, and then stated probably $35,000 to $40,000, but was

unsure of the exact amount.

24. Officers also found two cell phones in the Subject Vehicle. In plain view, an officer observed an incoming text message from earlier that day on one of the phones stating, "Can I get 2 g?" Upon information and belief, this text message is consistent with an individual asking Smiley to distribute or sell two grams of a drug.

25. MSP K-9 officer Macho alerted for the presence of narcotics odor on the U.S. currency found in the backpack. Macho is not trained to alert on the presence of marijuana.

26. During a subsequent interview at the MSP Post in Paw Paw, Smiley stated that he was going to use the U.S. currency to buy a custom necklace from Hutch's Jewelry in Detroit. Smiley stated the custom necklace had not been made yet, and he still had to talk to the jeweler about the design. Smiley then stated that the money was for a down payment on the necklace, and that he did not intend to spend more than $25,000 on the necklace.

27. When asked why he changed his answer for the purpose of the money multiple times, Smiley stated that he had intentionally lied to the MSP trooper but did not know why he lied.

28. Smiley stated that the money was his and no one else had an interest in the money. Smiley also stated that there was $30,000 or $35,000 in the backpack. When told he was off by approximately $7,000, Smiley stated that was a small difference.

29. Smiley stated he has been unemployed since July 2020, and receives

unemployment assistance of $300 to $500 per week.

30. Smiley was convicted of misdemeanor possession of marijuana in July 2019 in South Bend, Indiana.

31. HSI agents seized the $42,020.00 in U.S. currency from the Subject Vehicle and converted it into Cashier's Check #26323, West Michigan Community Bank, the Defendant Property.

32. Upon information and belief, the Defendant Property was furnished, or intended to be furnished, in exchange for drugs, constitutes the proceeds of drug trafficking, and/or was being used to facilitate violations of 21 U.S.C. §§ 841 and 846.

## CLAIM I

33. Plaintiff hereby re-alleges paragraphs 1 – 32, as referenced above.

34. The Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM II

35. Plaintiff hereby re-alleges paragraphs 1 – 32, as referenced above.

36. The Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM III

37. Plaintiff hereby re-alleges paragraphs 1 – 32, as referenced above.

38. The Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money used or intended to be used to facilitate a violation of 21 U.S.C. Chapter 13, Subchapter I.

## REQUESTED RELIEF

Wherefore, the United States requests that the Court issue a warrant for the arrest of the Defendant Property; that due notice be given to all interested parties to appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Property be condemned and forfeited to the United States of America and be delivered into the custody of the United States Department of Homeland Security for disposition according to law; and for such other relief as this Court may deem just and proper.

ANDREW BYERLY BIRGE
United States Attorney

Dated: August 24, 2021

DANIEL T. McGRAW
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## VERIFICATION

I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations with personal involvement in this investigation.

I have read the contents of the foregoing Verified Complaint for Forfeiture In Rem, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____

CECIL R QUEEN  
Digitally signed by CECIL R QUEEN  
Date: 2021.08.11 10:00:09 -04'00'

CECIL QUEEN  
Special Agent  
Homeland Security Investigations